IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



| | | |
|---|---|---|
| STEPHEN MATTHEW AVDEEF, | § | |
| Plaintiff, | § § § | |
| VS. | § | NO. 4:14-CV-788-A |
| GOOGLE, INC., | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Came on for consideration the motion of defendant, Google, Inc.("Google"), for summary judgment. The court, having considered the motion, the response of plaintiff, Stephen Matthew Avdeef, the reply, the record, the summary judgment evidence, and applicable authorities, finds that the motion should be granted.

I.

### Plaintiff's Claims

On September 26, 2014, plaintiff filed his original complaint for copyright infringement and theft of intellectual property, naming Google and its chief legal officer, David C. Drummond as defendants. Plaintiff's claims against Drummond were dismissed by order and final judgment signed December 8, 2014, for lack of proof of *in personam* jurisdiction.

Plaintiff alleges in his complaint:

Plaintiff is the author and copyright owner of a novel titled "The Last Breath of Mars." Acknowledgment of the copyright

allowed plaintiff to release the novel for global publication through LULU Press.[1] Within six months, Google arbitrarily scanned the novel in its entirety and allowed the entire global internet community to read the entire contents of the novel for free. Plaintiff complained to Google and, for a time, the novel was removed. However, at some unknown point in time, Google relisted the copyrighted novel, where it went unnoticed for five or six years until it was brought to plaintiff's attention in September of 2012. After repeated written demands, Google finally removed the "allegedly copyrighted materials" on or about September 26, 2014. Plaintiff believes that Google has used and continues to use an online media distribution system to download the novel, to distribute the novel to the public, and/or to make the novel available for distribution to others.

Plaintiff seeks actual damages for infringement of his copyright and also seeks imposition of an injunction to prevent Google from further infringing plaintiff's copyright.

II.

Applicable Summary Judgment Principles

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court shall grant summary judgment on a claim or defense

---

[1] The summary judgment evidence establishes that the name of the company is Lulu, Inc. ("Lulu").

2

if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The movant bears the initial burden of pointing out to the court that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 325 (1986). The movant can discharge this burden by pointing out the absence of evidence supporting one or more essential elements of the nonmoving party's claim, "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. Once the movant has carried its burden under Rule 56(a), the nonmoving party must identify evidence in the record that creates a genuine dispute as to each of the challenged elements of its case. Id. at 324; see also Fed. R. Civ. P. 56(c) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."). If the evidence identified could not lead a rational trier of fact to find in favor of the nonmoving party as to each essential element of the nonmoving party's case, there is no genuine dispute for trial and summary judgment is appropriate. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,

475 U.S. 574, 587, 597 (1986). In <u>Mississippi Prot. & Advocacy Sys. v. Cotten</u>, the Fifth Circuit explained:

> Where the record, including affidavits, interrogatories, admissions, and depositions could not, as a whole, lead a rational trier of fact to find for the nonmoving party, there is no issue for trial.

929 F.2d 1054, 1058 (5th Cir. 1991).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law.[2] <u>Celotex Corp.</u>, 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. <u>Matsushita</u>, 475 U.S. at 597; see also <u>Mississippi Prot. & Advocacy Sys.</u>, 929 F.2d at 1058.

### III.

### Grounds of the Motion

Google asserts two grounds in support of its motion. First, Google complied with its license from Lulu, the self-publishing service through which plaintiff published his novel. Second, even if there was infringement, Google is entitled to the protection of the safe harbor of the Digital Millennium Copyright Act

---

[2] In <u>Boeing Co. v. Shipman</u>, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc), the Fifth Circuit explained the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict.

("DMCA"), Pub. L. No. 105-304, 112 Stat. 2860 (1998)(safe harbor codified at 17 U.S.C. § 512).

IV.

Analysis

A.  The Summary Judgment Evidence

The summary judgment evidence establishes the following:

Google Books is a service that allows Google users to search books and magazines based on content stored in a searchable digital database. Doc. 69[3] at 3. Google Books operates two programs to connect users with books, the Partner Program and the Library Project. At issue here is the Partner Program wherein content is provided to Google by publishers or authors. As part of the service, Google Books provides users a preview of a portion of the book's content, as authorized by the publisher or author. The publisher or author determines the extent to which access will be made available. Id.

In this case, plaintiff published his novel through Lulu, a self-publishing service, and licensed Lulu to distribute and display a preview of the book and to authorize others, like Google, to do the same. Id. at 1-2. In May 2006, Lulu first uploaded plaintiff's novel to Google Books and authorized Google to display portions of the text of the novel. Id. at 4. Google

---

[3]The "Doc." reference is to the Clerk's electronic filing record for this action.

initially set the partial preview rate at 10% of the total content of the novel. Id. On May 16, 2008, Google adjusted the preview rate to 20% in accordance with its agreement with Lulu. Id.

In February 2007, plaintiff emailed Google, stating that while "it is great that someone can read random excerpts," plaintiff was concerned that the entire epilogue of his novel was available for viewing. Id. at 180. Google responded, noting that it was unable to select particular pages to remove from view. Id. It did not hear anything further from plaintiff until September 12, 2012, when plaintiff wrote to Google, asserting for the first time that, five years earlier, he had requested Google to remove his novel from Google Books. Id. at 5; 181. Plaintiff said that he had been told that the novel could be accessed for free. Id. at 181. Plaintiff accused Google of stealing his intellectual property over the course of the previous six years and demanded that Google compensate him. Id. He alleged that he had never authorized Google or anyone else to republish any of his novel (which is, of course, contrary to his agreement with Lulu, id. at 2). Id. at 181. On September 26, 2012, Google acknowledged plaintiff's letter and stated that the preview pages had been removed such that no copyrighted material was displayed. Id. at 182. No more than 20% of plaintiff's novel has ever been

6

available for view on Google Books and none of it has been available since September 26, 2012. Id. at 4-5.

Google did not sell plaintiff's novel or charge anyone for searching for it. Id. at 5. Google received $.27 in advertising revenue from ads that were at one time displayed on the novel's preview page. Id. Google maintains a designated agent to receive notifications of claimed infringement; the designation is filed with the United States Copyright Office and disclosed on the Google Books website. Id.

B.  License to Use Material

In order to establish a claim for copyright infringement, plaintiff must show that he owns a valid copyright and that Google copied constituent elements of his work that are original. Baisden v. I'm Ready Prods., Inc., 693 F.3d 491, 499 (5th Cir. 2012). Regardless of whether these elements exist, however, "the existence of a license authorizing the use of copyrighted material is an affirmative defense to an allegation of infringement." Id. (quoting Carson v. Dynegy, Inc., 344 F.3d 446, 451 n.5 (5th Cir. 2003)). And, here, the undisputed summary judgment evidence establishes that Lulu granted Google a license to display portions of plaintiff's novel, which Lulu was authorized to do pursuant to its agreement with plaintiff. There

7

is no competent summary judgment evidence that Google violated its agreement with Lulu.[4]

C. <u>Safe Harbor</u>

The DMCA contains a safe harbor protecting service providers such as Google from liability for copyright infringement in certain circumstances. In particular, Google relies on the 17 U.S.C. § 512(c)(1), which provides:

> (c) **Information residing on systems or networks at direction of users.**--
> (1) **In general.**-- A service provider shall not be liable for monetary relief, or, except as provided in subsection (j), for injunctive or other equitable relief, for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider, if the service provider--
> (A)(i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;
> (ii) in the absence of such actual knowledge, is not aware of facts or circumstances from which infringing activity is apparent; or
> (iii) upon obtaining such knowledge or awareness, acts expeditiously to remove, or disable access to, the material;
> (B) does not receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity; and
> (C) upon notification of claimed infringement as described in paragraph (3), responds expeditiously to remove, or disable access to, the material that is

---

[4] Plaintiff has come forward with nothing more than hearsay evidence in an attempt to create a fact issue as to infringement. In any event, for the reasons discussed <u>infra</u>, Google is entitled to the benefit of the safe harbor under the DMCA.

8

claimed to be infringing or to be the subject of infringing activity.

The summary judgment evidence establishes: Plaintiff's lawsuit arises out of the storage of copyrighted material on a system or network controlled or operated by Google. The information was stored at the direction of Lulu, acting on behalf of plaintiff and with his authorization. Google designated an agent to receive notifications of infringement. Google did not know of any infringement until plaintiff sent his letter of September 12, 2012. (In fact, Google had no reason to know of such infringement, as it was not aware of facts or circumstances from which infringing activity was or would have been apparent.) Google acted expeditiously to disable access to plaintiff's novel. Google did not receive a financial benefit directly attributable to any infringing activity.

Accordingly, Google is entitled to the benefit of the safe harbor provision. UMG Recordings, Inc. v. Shelter Capital Partners, LLC, 718 F.3d 1006, 1023 (9th Cir. 2013); Wolk v. Kodak Imaging Network, Inc., 840 F. Supp. 2d 724, 745-46 (S.D.N.Y. 2012).

V.

Order

The court ORDERS that Google's motion for summary judgment be, and is hereby, granted; that plaintiff take nothing on his

9

claims against Google; and that such claims be, and are hereby, dismissed with prejudice.

    SIGNED August 26, 2015.

_____
JOHN McBRYDE
United States District Judge